**15-25-00150-CV**

ACCEPTED
15-25-00150-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
9/19/2025 8:26 PM
CHRISTOPHER A. PRINE
CLERK

No. 25-_____

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
9/19/2025 8:26:13 PM
CHRISTOPHER A. PRINE
Clerk

15ᵗʰ Court of Appeals of Texas

*In Re ColossusBets Limited*
Relator.

# PETITION FOR WRIT OF MANDAMUS

Original Proceeding from
Cause No. 25-BC03A-0007
Business Court of Texas
Third Division
Austin, Texas

**PILLSBURY WINTHROP SHAW PITTMAN LLP**

Derrick Carson (Texas Bar No. 24001847)
Charles Conrad (Texas Bar No. 24040721)
Jonathan Sink (Texas Bar No. 24099968)
Lindsey Mitchell (Texas Bar No. 24138645)
PILLSBURY WINTHROP SHAW PITTMAN LLP
609 Main Street, Suite 2000
Houston, Texas 77002
(713) 276-7600 (Telephone)
(713) 276-7673 (Facsimile)
Derrick.Carson@pillsburylaw.com
Charles.Conrad@pillsburylaw.com
Jonathan.Sink@pillsburylaw.com
Lindsey.Mitchell@pillsburylaw.com

***Counsel for Relator ColossusBets Limited***

*ORAL ARGUMENT REQUESTED*

## IDENTITIES OF PARTIES AND COUNSEL

*Relator/Defendant*

ColossusBets Limited

    *Represented by:*

    Derrick Carson (Texas Bar No. 24001847) (Lead Counsel)
    Charles Conrad (Texas Bar No. 24040721)
    Jonathan Sink (Texas Bar No. 24099968)
    Lindsey Mitchell (Texas Bar No. 24138645)
    Pillsbury Winthrop Shaw Pittman LLP
    609 Main Street, Suite 2000
    Houston, Texas 77002
    (713) 276-7600 (Telephone)
    (713) 276-7673 (Facsimile)
    Derrick.Carson@pillsburylaw.com
    Charles.Conrad@pillsburylaw.com
    Jonathan.Sink@pillsburylaw.com
    Lindsey.Mitchell@pillsburylaw.com

*Respondent*

    Honorable Melissa Andrews
    Judge of the Texas Business Court, Third Division
    Austin, Texas

*Real Parties in Interest*

    *Plaintiff*

    Jerry B. Reed

    *Represented by:*

    Richard L. LaGarde (Texas Bar No. 11819550)
    Mary LaGarde (Texas Bar No. 24037645)
    LAGARDE LAW FIRM, P.C.
    230 Westcott St., Suite 100
    Houston, TX 77007
    TEL: (713) 993-0660

richard@lagardelaw.com
mary@lagardelaw.com

Manfred Sternberg (Texas Bar No. 19175775)
MANFRED STERNBERG & ASSOCIATES, P.C.
1700 Post Oak Blvd.
2 BLVD Place Suite 610
Houston, TX 77056
TEL: (713) 622-4300
FAX: (713) 622-9899
manfred@msternberg.com

Jeff Adams (Texas Bar No. 24006736)
THE LAW OFFICE OF JEFF ADAMS, PLLC
119 Logansport Street
Center, TX 75935
Tel: (936) 598-4900
jeff@jeffadamslaw.com

### Other Defendants

Rook TX LP

Rook GP LLC

### Represented by:

David E. Harrell, Jr. (Texas Bar No. 00793905) (Lead Counsel)
Mia Lorick (Texas Bar No. 24091415)
Kathleen C. Laird (Texas Bar No. 24132063)
Bradden Pippin (Texas Bar No. 24143893)
Troutman Pepper Locke LLP
600 Travis, Suite 2800
Houston, Texas 77002-3095
Telephone: (713) 226-1200
Facsimile: (713) 229-2510
David.Harrell@Troutman.com
Mia.Lorick@Troutman.com
Kathleen.Laird@Troutman.com
Bradden.Pippin@Troutman.com

Qawi and Quddus, Inc.

**_Represented by:_**

Jon Michael Smith (Texas Bar No. 18630750)
3301 Northland Dr., Suite 215
Austin, Texas 78731
Tel: (512) 371-1006
Fax: (512) 476-6685
jon@jonmichaelsmith.com

Lottery Now, Inc.

**_Represented by:_**

Aimee C. Oleson (Lead Counsel) (Texas Bar No. 24036391)
Grace S. Miller (Texas Bar No. 24132499)
SHEPPARD MULLIN RICHTER & HAMPTON LLP
2200 Ross Avenue, 20th Floor
Dallas, Texas 75201
Tel. (469) 391-7400
Fax (469) 391-7401
aoleson@sheppardmullin.com
gmiller@sheppardmullin.com

Autolotto, Inc.

**_Represented by:_**

No appearance to date.

Lottery.com, Inc.

**_Represented by:_**

No appearance to date.

AltX Management, LLC

**Represented by:**

No appearance to date.

White Swan Data Ltd.

**Represented by:**

No appearance to date.

Lawrence Anthony DiMatteo III

**Represented by:**

No appearance to date.

Ryan Dickinson

**Represented by:**

Ryan Dickinson
6000 Ed Bluestein Blvd, Apt 10104
Austin, TX 78723
512-645-8311
ryandickinson79@gmail.com

Bernard Marantelli

**Represented by:**

No appearance to date.

Zeljko Ranogajec

**Represented by:**

No appearance to date.

# TABLE OF CONTENTS

Page

STATEMENT OF THE CASE.................................................................................1

STATEMENT OF JURISDICTION......................................................................3

RECORD REFERENCES .....................................................................................4

ISSUES PRESENTED...........................................................................................4

STATEMENT REGARDING ORAL ARGUMENT ..............................................5

INTRODUCTION .................................................................................................6

STATEMENT OF FACTS ....................................................................................9

   I.  Respondent (Correctly) Determines Business Court Has Jurisdiction............9

   II.  Respondent (Wrongly) Reverses Course After Plaintiff Amends His Pleading Seeking To Avoid Jurisdiction. .......................................................12

   III. To Date, ColossusBets Has Only Specially Appeared.................................16

STANDARD OF REVIEW .................................................................................18

SUMMARY OF ARGUMENT ............................................................................21

ARGUMENT .......................................................................................................22

   I.  The Business Court's Jurisdiction, Once Established, Cannot Be Lost—It Is A One-Way Door Through Which Jurisdiction Remains Proper Until Final Judgment.........................................................................22

      A. The Express Language Of Several Provisions In Chapter 25A (And Other Rules) Reflects Jurisdiction Is A One-Time Determination That Should Be "Prompt" And "Final."......................................................23

      B. The Federal System Is Different From The Texas System. .....................28

      C. Another State With A Longer-Established Business Court Has A One-Way Jurisdictional Door.................................................................32

II. Respondent Abused Its Discretion When, After Determining It Had Jurisdiction, Reversed Course Based On Forum-Shopping Amendments By Plaintiff. ...................................................................34

PRAYER ...............................................................................................35

VERIFICATION ...................................................................................37

CERTIFICATE OF SERVICE .............................................................38

CERTIFICATE OF COMPLIANCE ....................................................38

# INDEX OF AUTHORITIES

Page(s)

Cases

*C Ten 31 LLC v. Tarbox*,
2025 Tex. Bus. 1, 708 S.W.3d 223 (Tex. Bus. Ct. 2025)...................................18

*City of Ingleside v. City of Corpus Christi*,
469 S.W.3d 589 (Tex. 2015) ...............................................................................18

*Cont'l Coffee Products Co. v. Cazarez*,
937 S.W.2d 444 (Tex. 1996) ...........................................................................15, 22

*Grynberg v. M-I L.L.C.*,
398 S.W.3d 864 (Tex. App.—Corpus Christi 2012, pet. denied) ......................16

*Gutierrez v. Cayman Islands Firm of Deloitte & Touche*,
100 S.W.3d 261 (Tex. App.—San Antonio 2002, pet. dism'd) ..........................16

*Huie v. DeShazo*,
922 S.W.2d 920 (Tex. 1996) ..........................................................................18, 34

*In re Am. Homestar of Lancaster, Inc.*,
50 S.W.3d 480 (Tex. 2001)..................................................................................18

*In re AutoZoners, LLC*,
694 S.W.3d 219 (Tex. 2024) ...............................................................................18

*In re ETC Field Services, LLC*,
707 S.W.3d 924 (Tex. App.—15th Dist. 2025)..................................3, 18, 19, 20

*In re GlobalSanteFe Corp.*,
275 S.W.3d 477 (Tex. 2008) ...............................................................................19

*In re H.E.B. Grocery Co., L.P.*,
492 S.W.3d 300 (Tex. 2016) ...............................................................................18

*In re Prudential Ins. Co. of Am.*,
148 S.W.3d 124 (Tex. 2004) ....................................................................3, 19, 20

*In re Shipman*,
540 S.W.3d 562 (Tex. 2018) .........................................................................18, 34

*Malouf v. State*
ex rels. *Ellis*, 694 S.W.3d 712 (Tex. 2024) .................................................23, 24

*Olds v. Olds*,
No. 25CV000166-740, 2025 NCBC Order 57, 2025 NCBC LEXIS 102
(Aug. 13, 2025) .................................................................................33, 34

*Pharus Funding, LLC v. Garcia*,
No. 01-20-00411-CV, 2021 WL 3556679 (Tex. App.—Houston [1st
Dist.] Aug. 12, 2021, pet. denied)..................................................26

*PKT1, LLC v. Vaynberg*,
2022 NCBC LEXIS 72 (N.C. Super. Ct. July 5, 2022)....................................33

*Pub. Util. Comm'n of Tex. v. Luminant Energy Co. LLC*,
691 S.W.3d 448 (Tex. 2024) .................................................24, 26, 30

*Royal Canin U. S. A., Inc. v. Wullschleger*,
604 U.S. 22 (2025)....................................... 13, 14, 15, 28, 29, 30, 32

*U.S. Polyco, Inc. v. Tex. Cent. Bus. Lines Corp.*,
681 S.W.3d 383 (Tex. 2023) .................................................24

## Constitutions

Texas Constitution
    Article V, section 1 ........................................................................3
    Article V, section 6 ........................................................................3

United States Constitution
    Amendment IX..............................................................................29
    Article I, section 8........................................................................28
    Article II, section 2 ......................................................................28
    Article III, section 2 .....................................................................28

## Statutes and Codes

United States Code
    Title 28, section 1367....................................................................29
    Title 28, section 1441(a) ...............................................................29
    Title 28, section 1447(c) ...............................................................30

North Carolina General Statutes
    Section 7A-45.4(a) ............................................................................33
    Section 7A-45.4(a)(1) ......................................................................32

Texas Government Code Annotated
    Chapter 25A ....................................................21, 23, 24, 28
    Section 22.201(p) ............................................................................3
    Section 22.221 ................................................................................3
    Section 25A.004 ............................................................................11
    Section 25A.004(b)(2) ....................................................6, 14, 15, 32
    Section 25A.006 ............................................................................25
    Section 25A.006(b) ........................................................................25
    Section 25A.006(c) ........................................................................25
    Section 25A.006(d) ............................................................25, 30, 32
    Section 25A.006(f) ..................................................................26, 32
    Section 25A.006(f)(1) ....................................................................26
    Section 25A.006(l) ..................................................................12, 27
    Section 25A.007(a) ........................................................................3
    Section 25A.0041(a) ..........................................................24, 25, 31
    Section 25A.0041(a)(3) ..................................................................24
    Section 25A.0041(b)(3) ..................................................................31
    Section 25A.0041(b)(7) ..................................................................31

## Rules and Regulations

Texas Rules of Appellate Procedure
    Rule 52.1 ........................................................................................3
    Rule 52.2 ........................................................................................3
    Rule 52.7 ........................................................................................4

Texas Rules of Civil Procedure
    Rule 355 ........................................................................................25
    Rule 355(f)(1) ....................................................................26, 27, 31

## Other Authorities

Antonin, Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012) ........................................................................24

## STATEMENT OF THE CASE

*Nature of the Case:* This is a suit by Plaintiff Jerry B. Reed, an individual resident of Texas, against an array of domestic and international Defendants alleging that he would have won *more* money in the May 2023 Lotto Texas jackpot (after winning $7.5 million) had the Defendants not conspired to "illegally manipulate[ ]" the lottery the month before. The suit is still at the jurisdictional stage of litigation, although Defendants have Rule 91a motions to dismiss pending.

This petition arises out of the Texas Business Court's decision to reverse course—after having denied a motion to remand and exercising jurisdiction, it later remanded the case to the District Court citing Plaintiff's subsequent, twice-amended petition that allegedly removed the allegations that originally triggered the Business Court's jurisdiction.

*Respondent:* Honorable Melissa Andrews
Judge of the Texas Business Court, Third Division
Austin, Texas

*Respondent's Action:* On August 25, 2025, Judge Andrews issued an opinion (2025 Tex. Bus. 34) holding that the Business Court lacked jurisdiction over the action and granted Plaintiff's Renewed Motion to Remand to the 353rd District Court. That opinion came only two months after the same Court determined it *did* have jurisdiction over the action, denying Plaintiff's previous Motion to Remand (2025 Tex. Bus. 23). Critically, the only intervening change was Plaintiff filing Third and Fourth Amended Petitions which supposedly "remov[ed]" the jurisdiction-triggering allegations from his Second Amended Petition (which the Court analyzed when originally exercising jurisdiction). Significantly, although Plaintiff changed his claims against the Rook Defendants who had removed the case, the claims against Relator and the other defendants were essentially unchanged, the same claims that the court

exercised jurisdiction over until it later found that it could no longer do so.

**<u>STATEMENT OF JURISDICTION</u>**

This Court has exclusive and statewide intermediate appellate jurisdiction over matters appealed from the Texas Business Court "or an original proceeding related to an action or order of the business court." *See* TEX. CONST., ART. V, § 1; TEX. GOV'T CODE §§ 22.201(p) & 25A.007(a). Texas courts of appeal generally have the power to grant the writ of mandamus. TEX. CONST., ART. V, § 6; TEX. GOV'T CODE § 22.221. An original appellate proceeding may be commenced in the appropriate court of appeals by petition filed by a relator against the respondent who took the challenged action. TEX. R. APP. P. 52.1, 52.2.

As this Court recently noted, "[m]andamus review of significant rulings in exceptional cases would allow this Court 'to give needed and helpful direction to the law that would otherwise prove elusive.'" *In re ETC Field Services, LLC*, 707 S.W.3d 924, 929 (Tex. App.—15th Dist. 2025) (orig. proceeding). This case presents the type of "exceptional case" where mandamus is "essential to preserve important substantive and procedural rights from impairment or loss." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004).

**RECORD REFERENCES**

Materials supporting this Petition have been concurrently filed as an Appendix to this Petition in a Mandamus Record sworn to by counsel as provided for under TEX. R. APP. P. 52.7. The Mandamus Record will be cited as "(MR __)."

**ISSUES PRESENTED**

1. The Business Court must remand an action removed to Business Court if, and only if, "removal was improper." Once the Texas Business Court determines removal is proper and establishes jurisdiction over an action, can a plaintiff divest the court of jurisdiction through later, forum-shopping pleading amendments?

## STATEMENT REGARDING ORAL ARGUMENT

Relator respectfully requests oral argument to assist the Court in considering critical questions about the jurisdiction of the newly created Texas Business Court. A decision in this matter will not only establish consequential precedent regarding the scope of the Business Court's jurisdiction, but also determine how to practically execute the intent of the Texas Legislature in creating the Business Court. This Court's decision will also be critical in guiding the Business Court as well as litigants across Texas on how pleadings may impact matters of jurisdiction between district courts and the Texas Business Court and therefore in which court they should file and/or proceed.

## INTRODUCTION

Respondent was faced with an issue of first impression: having already decided that the court had jurisdiction and that removal was proper, what effect should be given to a blatantly forum-shopping pleading amendment that sought to divest the court of jurisdiction? Respondent took too narrow a view of its jurisdictional remit and wrongly decided that a plaintiff could plead his way out of Business Court, even after a finding that the case had been properly removed. Respondent did so despite **having already** analyzed the jurisdictional question, issued a thorough opinion, **found jurisdiction**, and proceeded with its administrative orders concerning trial and discovery. This about-face was an abuse of discretion. It is especially important to correct Respondent's error given the newness of the Business Court, its importance within the State's judicial system, and the first-impression nature of the issue of that court's jurisdiction and a remand procedure new to Texas practice.

In its first opinion, Respondent denied Plaintiff's Motion to Remand and rightly—and thoroughly—determined that the Business Court had jurisdiction over the "entire action," pursuant to Gov't Code § 25A.004(b)(2). This was because (1) Plaintiff's allegations "regarded" the "internal affairs" and "governance" of the Rook Defendants, and (2) "***[a]ll of [Plaintiff]'s causes of action*** rely on the alleged scheme for Rook to illegally claim the April 2023 lottery, and [Plaintiff] ***seeks to***

6

***hold all defendants liable*** for the alleged misdeeds of the others through his derivative claims." MR 199 (Opinion and Order (2025 Tex. Bus. 23 [hereinafter "1st Op."])), ¶3. Unhappy with this decision, Plaintiff amended his petition ***two more times*** attempting to carve away any allegations that originally warranted the exercise of Business Court jurisdiction, only to then renew his Motion to Remand. This was blatant forum-shopping.

Respondent should have summarily denied the Renewed Motion to Remand. But Respondent accepted Plaintiff's misguided premise that the Business Court's jurisdiction is like a revolving door (relying heavily on federal authorities). Instead, Respondent should have seen it for what it actually is—a one-way door. This is why the Texas statutes and rules state that remand is appropriate only "if removal was improper" as opposed to the federal scheme that requires remand if jurisdiction is thereafter lacking "at any time before final judgment." Those are two very different standards for remand and they demand different results. Indeed, other states (such as North Carolina) that have well-established Business Courts have rightly determined that Business Court jurisdiction is a one-way door. Texas should follow suit.

The statutes and rules that apply to the Business Court, along with its nature and purpose as enacted by the Texas Legislature, reflect that this State seeks to provide a forum for thorough analysis of legal issues (hence an opinion

7

requirement), limited potential for movement of cases between the district courts and the Business Court, and the development of a robust body of precedent on which companies may rely in the future. All of this is aimed at incentivizing companies to transplant their headquarters and formation to the State of Texas, under the law of Texas, and for the good of both enterprise and ultimately the people of Texas.

Accordingly, once an "action" is within the Business Court's jurisdiction, it cannot be remanded based on forum-shopping pleading amendments. Plaintiffs should not be permitted to game themselves out of the Business Court, thereby undermining the purpose of the Court to further robust, efficient, and consistent adjudication. Respondent condoned such behavior in its second opinion. This was misplaced.

Accordingly, this Court should grant mandamus relief and instruct Respondent to retain Business Court jurisdiction and proceed with the action.

# STATEMENT OF FACTS

## I. Respondent (Correctly) Determines Business Court Has Jurisdiction.

On June 18, 2025, Respondent issued an opinion holding that the Texas Business Court had jurisdiction over Plaintiff Jerry B. Reed's Lawsuit ("First Decision").[1] MR 190, ¶3. This determination was based on the allegations in Plaintiff's Second Amended Petition, which was Plaintiff's live pleading at the time. MR 190, ¶4 (citing MR 20). As correctly explained by Respondent, Plaintiff's "claims against Rook TX LP and Rook GP LLC (collectively "Rook") (and against all defendants through his derivative theories) concern" matters of "governance, governing documents or internal affairs." MR 190, ¶3. Such matters included "(a) Rook's formation, as effectuated by its governing documents, (b) the legitimacy of Rook's purpose and operations, and (c) whether Reed can recover Rook's lottery proceeds from Rook and/or its interest holders and other payees." *Id.* Such matters were fundamental issues, not merely "tangential or extraneous matters," thus warranting the exercise of the Business Court's jurisdiction. *Id.* And, Respondent rightly determined that because all of Plaintiff's claims "center on the same factual nexus," the Business Court had jurisdiction over the ***entire*** case—all claims against all defendants. MR 190–92, ¶¶3 & 5.

---

[1] The Business Court did not rule on whether Reed pleaded viable causes of action, but rather assumed they were viable for purposes of deciding only the jurisdictional question.

Respondent's First Decision denied Plaintiff's Motion to Remand, which he filed after Rook removed the case to the Business Court. In the opinion's analysis, Respondent properly interpreted the jurisdictional statute and determined the following:

- "The undefined term 'action,' as used in [Government Code] Section 25A.004, refers to the [entire] lawsuit or judicial proceeding generally, as opposed to only individual causes of action or theories of liability." MR 194–95, ¶10.

- "Regarding," as used in that statute, is "undefined" and "can be given its common, ordinary meaning," which is "expansive and synonymous with terms like 'respecting,' 'concerning,' or 'referring to.'" *Id.*

- "Governance" refers to "the management and direction of [an] entity's affairs under its governing documents and applicable law." MR 195, ¶11.

- So long as the amount-in-controversy requirement is met, § 25A.004(b)(2) "gives [the Business] Court jurisdiction over a[n] [entire] lawsuit … concerning or respecting [ ] the management and direction of an organization's affairs," the "management and direction of an organization's affairs," the "documents adopted to govern its formation and internal affairs," the "ownership or membership interests" of such organization, or "the rights, powers, and duties of its governing persons, officers, owners, or members. MR 196, ¶12.

Applying these principles to the allegations in Plaintiff's Second Amended Petition, Respondent determined that the Lawsuit "concerns the date of Rook's formation and whether Rook was formed for improper purposes and in furtherance of the alleged conspiracy to enable Rook to fraudulently claim the April 2023 lottery winnings." MR 199, ¶18; *see* MR 196–99, ¶¶13–18 (detailing allegations). As a result, "[t]he action necessarily concerns Rook's governance, governing documents,

10

or internal affairs, and therefore falls within th[e] [Business] Court's jurisdiction under Section 25A.004(b)(2)." MR 199, ¶18.

Critically, Respondent further found that "*[a]ll of Reed's causes of action* rely on the alleged scheme for Rook to illegally claim the April 2023 lottery, and Reed *seeks to hold all defendants liable* for the alleged misdeeds of the others through his derivative claims." *Id.* (emphases added). In other words, even though the allegations about governance and internal affairs specifically concerned Rook, not the other defendants, and even though Reed's claims concerned other matters separate from governance, the *entire action* is still considered to "regard" matters of governance and therefore all claims against all defendants fall within the Business Court's jurisdiction. This is because "[a] lawsuit can concern more than one thing," and "all of these alleged matters are interwoven into a single alleged conspiracy." MR 202, ¶21. This feature of Reed's Lawsuit is particularly reflected in Reed seeking the same $95 million in damages "from all defendants under all of his causes of action." *Id.*

Summarizing its reasoning, Respondent reiterated that Section 25A.004 "does not compel the Court to granulate each of Reed's causes of action into every individual factual basis for liability he alleged in support of that cause." MR 205,

¶25. Rather, when the statute "bestow[s] original jurisdiction," it bestows such jurisdiction over the "entire action."[2] *Id.*

Soon after its decision, on June 24, 2025, Respondent issued a scheduling order pursuant to applicable rules and procedures—including specifically Tex. Gov't Code §25A.006(*l*)—setting all major deadlines, selecting a trial date, and laying venue for trial in Travis County, Texas. *See* MR 205 (Scheduling Order (entered June 24, 2025)).

## II.   Respondent (Wrongly) Reverses Course After Plaintiff Amends His Pleading Seeking To Avoid Jurisdiction.

Plaintiff apparently was not pleased with the Business Court exercising jurisdiction. So, he amended his Second Amended Petition ***two more times***, then filed a Renewed Motion to Remand arguing that his "Fourth Amended Petition [ ] significantly narrows the claims and removes all allegations that would require adjudication of Defendants' 'governance, governing, documents, or internal affairs.'"   MR 292. According to Plaintiff, "remand [was] now required." *Id.* Plaintiff openly acknowledged his gamesmanship.   Quoting from his newly amended petition, he argued that he "disclaim[ed] any allegation, legal theory, or request for relief that requires this Court to interpret or enforce the governance,

---

[2] Significantly, Respondent expressly determined that it need not and was not exercising supplemental jurisdiction over any of the claims. MR 193 n.13.

internal affairs, or governing documents of any Defendant entity." MR 293. In other words: "I have worked around your jurisdiction, Business Court. Now let me go."

It must be noted, however, that the claims against Relator and the other non-Rook defendants were essentially unchanged. Rook properly removed the case to Business Court and the other Defendants went with it. As such, Respondent properly determined that it had jurisdiction over all of Reed's claims, including claims against the other Defendants, for the reasons stated above. Those claims did not change in any meaningful way between the Second and Fourth Amended Petitions.

Yet, Respondent wrongly countenanced the gamesmanship—"Reed has successfully pleaded his way out of this Court's jurisdiction…." MR 339 (Opinion and Order (2025 Tex. Bus. 34 [hereinafter "2nd Op."])), ¶2. Respondent acknowledged the general rule in Texas that "later events generally do not divest a court of jurisdiction once properly acquired," *id.*, but then went on to hold otherwise relying almost exclusively on federal authorities addressing federal jurisdiction, namely the United States Supreme Court's recent opinion in *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22 (2025). Because Reed "drop[ped] all claims against the Rook defendants except for 'money had and received' and 'expressly disclaim[ed] any allegation, legal theory, or request for relief that requires th[e] [Business] Court to interpret, apply, or enforce the governance, internal affairs, or

13

governing documents of any Defendant entity," Reed "divest[ed] th[e] [Business] Court of jurisdiction." MR 342-343, ¶7.

According to Respondent, Reed was able to "divest" the court of jurisdiction because, if the court newly considered the jurisdictional question as if it was the first time, there was no longer a basis for jurisdiction. MR 344-56, ¶¶9–24 (analyzing supplemental qualified transaction, and trade regulation jurisdiction all in the first instance). Respondent entirely failed to consider whether, in the first instance, the Business Court was even permitted to revisit the jurisdictional question after having made a first and (as Relator argues herein) final determination on the matter. Indeed, Respondent specifically, and confusingly, punted the issue:

> While the Rook defendants rely on [the general proposition about "no later fact or event can defeat the court's jurisdiction"] to argue supplemental jurisdiction, they do not assert jurisdiction under Section 25A.004(b)(2). The Court thus need not determine whether the general rule [ ] should be construed to mean that the Court's jurisdiction under (b)(2) was fixed at the time of removal and could not be destroyed by subsequent filings.

MR 344, ¶9 n.27 (citing *Royal Canin* to suggest new complaint could divest "depend[ing] on what the new complaint says"). Of course, if analyzed again based on the Fourth Amended Petition, there was no longer jurisdiction under 25A.004(b)(2) as those claims had been dismissed. The real question was whether the Respondent could disregard the "general rule" in Texas that "where jurisdiction is once lawfully and properly acquired, no later fact or event can defeat the court's

14

jurisdiction," which Rook argued relying on *Cont'l Coffee Products Co. v. Cazarez*, 937 S.W.2d 444, 449 (Tex. 1996). But simply because Rook challenged the Renewed Motion to Remand on the basis that Texas courts do not lose jurisdiction once properly acquired and it framed certain other arguments in terms of "supplemental jurisdiction" instead of arguing that the court retained Section 24A.004(b)(2) jurisdiction, Respondent disregarded the need to first consider whether it had the authority—at all—to revisit jurisdiction.[3] What remained of Respondent's mention of this issue was relegated to footnotes. MR 344, ¶9 n.27; *see also* MR 346, ¶12 n.35 (again citing *Royal Canin* and stating that when a plaintiff amends her pleading in federal court to remove a federal question, the federal case must be remanded to state court). Acknowledging that Rook "argue[d] that differences in the relevant Texas and federal jurisdictional statutes justify a different outcome here than in *Royal Canin*," the Court still declined "to reach that issue," again, apparently because it was couched in terms of ongoing "supplemental jurisdiction" in Rook's briefing. MR 346, ¶12 n.35.

---

[3] The only other sentence to impliedly address the matter was another reference to *Royal Canin* to support the proposition that "the plaintiff is the master of the complaint." MR 338, ¶2. But Relator does not deny that a plaintiff is the "master" of his complaint. Rather, what Relator challenges is whether, once the "master" pleads his way into Business Court, the statutory scheme precludes subsequent re-analysis of the issue. *Infra*, at 21–27. There is no doubt that the plaintiff was initially the "master" of whether his complaint might send his case through the one-way door to Business Court. But he does not get to "re-master" his way out given the text, structure and purpose of the applicable statutes and procedural rules.

15

## III. To Date, ColossusBets Has Only Specially Appeared.

After removal, and before the latest two pleading amendments filed by Plaintiff Reed, ColossusBets entered ***only*** a Special Appearance in the underlying action. MR 403 (ColossusBets' Special Appearance); *see also* MR 357-395 (Rule 91a Motion and Amended Motion based on same grounds). The Special Appearance challenges the trial court's authority to exercise personal jurisdiction over ColossusBets, and it remains pending. Indeed, it is through this mandamus petition that ColossusBets seeks to have the appropriate trial court rule on the matter of personal jurisdiction.

Accordingly, and to avoid any doubt concerning the nature of Relator's appearance in the underlying action in light of this Petition, Relator expressly reserves all rights to further challenge the authority of the trial court to act, including on grounds of lack of personal jurisdiction, consistent with and subject to its Special Appearance in the underlying matter. *See Grynberg v. M-I L.L.C.,* 398 S.W.3d 864, 878 (Tex. App.—Corpus Christi 2012, pet. denied) ("Texas courts have recognized that appearing in matters ancillary and prior to the main suit does not constitute a general appearance in the main suit and will not waive a personal-jurisdiction challenge."); *Gutierrez v. Cayman Islands Firm of Deloitte & Touche*, 100 S.W.3d 261, 267 (Tex. App.—San Antonio 2002, pet. dism'd) (mandamus filing and motion for emergency relief does not waive special appearance because "a party's

16

appearance before an appellate court" in an independent original proceeding does not constitute "a general appearance before the trial court").

## STANDARD OF REVIEW

"Mandamus relief is available if the relator establishes a clear abuse of discretion for which there is no adequate appellate remedy." *In re AutoZoners, LLC*, 694 S.W.3d 219, 223 (Tex. 2024); *see also In re ETC Field Services, LLC*, 707 S.W.3d 924, 926 (Tex. App.—15th Dist. 2025) (denying mandamus for reasons different from instant case). "A trial court has no discretion to determine what the law is or in applying the law to the facts, and, consequently, the trial court's failure to analyze or apply the law correctly is an abuse of discretion." *In re Am. Homestar of Lancaster, Inc.*, 50 S.W.3d 480, 483 (Tex. 2001); *see also In re H.E.B. Grocery Co., L.P.*, 492 S.W.3d 300, 302-03 (Tex. 2016) (orig. proceeding) (per curiam) (abuse of discretion where trial court "fails to correctly analyze or apply the law to the facts."). This is true "***even when the law is unsettled***." *In re Shipman*, 540 S.W.3d 562, 566 (Tex. 2018) (orig. proceeding) (emphasis added). Furthermore, a trial court can abuse its discretion in resolving a legal issue even if the issue is a matter of "first impression." *Huie v. DeShazo*, 922 S.W.2d 920, 927 (Tex. 1996) (orig. proceeding).

Subject-matter jurisdiction pursuant to applicable statutes is, generally, a question of law for the court to decide. *City of Ingleside v. City of Corpus Christi*, 469 S.W.3d 589, 590 (Tex. 2015); *see also C Ten 31 LLC v. Tarbox*, 2025 Tex. Bus.

18

1, ¶9, 708 S.W.3d 223, 230 (Tex. Bus. Ct. 2025). A trial court therefore abuses its discretion if jurisdiction is wrongly determined.

"The adequacy of an appellate remedy must be determined by balancing the benefits of mandamus review against its detriments." *In re GlobalSanteFe Corp.*, 275 S.W.3d 477, 483 (Tex. 2008). As part of that balancing test, courts consider whether mandamus relief will safeguard important substantive and procedural rights from impairment or loss." *Id.* (cleaned up). Beyond the impairment of rights, courts should also consider whether mandamus will "allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments."[4] *Id.* Courts should also consider whether mandamus relief will "spare private parties and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004). "Prudent mandamus relief is also preferable to legislative enlargement of interlocutory appeals." *Id.* at 137.

As such, mandamus is the appropriate remedy here. *ETC Field Services*, 707 S.W.3d at 928 (acknowledging the propriety of mandamus review in this Court and reasoning that "[r]emoval of qualifying cases to the business court is a statutory right that must be respected…."). As demonstrated herein, Respondent incorrectly

---

[4] The Fifteenth Court of Appeals has already acknowledged the critical role this particular consideration plays in the development of the newly created Business Court's jurisprudence. *ETC Field Services*, 707 S.W.3d at 929.

19

interpreted and applied applicable statutes and procedural rules concerning the Business Court's jurisdiction. Indeed, Respondent mostly avoided the critical issue of whether jurisdiction can even be revisited at all following a finding that removal was proper. Moreover, there is no adequate appellate remedy for interlocutory orders concerning jurisdiction or the proper forum for a lawsuit. *See id.* at 925 ("[N]o interlocutory appeal is available in these circumstances."). By the time a final judgment is issued which can be appealed, a litigant has already proceeded in the very forum which the litigant claims is improper. In other words, the litigant's statutory or other rights to be heard in a particular forum have long been violated and no remedy can then adequately correct it. Under the *Prudential* analysis, mandamus is the preferable remedy, particularly given the "need" for "helpful direction" in the jurisdictional law of the newly created Business Court.

## SUMMARY OF ARGUMENT

Respondent incorrectly concluded that the Business Court could revisit the issue of its own jurisdiction despite having already fully and finally decided its jurisdiction upon removal. Plaintiff's attempt to game jurisdiction through artful pleading should have had no sway for three reasons:

**A.** The plain text, structure, and purpose of the Chapter 25A statutory scheme.

**B.** Respondent's reliance on federal authorities concerning federal jurisdiction was misguided given both the fundamental differences between federal courts of limited jurisdiction under the United States Constitution as opposed to the Texas Business Court's concurrent jurisdiction within the state's judicial system and the differing standards for remand of cases removed to those courts.

**C.** North Carolina, a state with a long-established Business Court and similar statutory scheme, has rightly determined that jurisdiction (called "designation" in that state) is a once and for all determination that cannot be avoided by later, artful pleading attempts.

21

**I.     The Business Court's Jurisdiction, Once Established, Cannot Be Lost— It Is A One-Way Door Through Which Jurisdiction Remains Proper Until Final Judgment.**

There is no disputing that the Business Court previously determined it had jurisdiction. It did so after thorough review and consideration of Plaintiff's Motion to Remand, Plaintiff's live petition, and responsive briefing from Defendants. After all that, the Court issued an 18-page opinion setting forth its careful reasoning.

The question for this Court is whether the Texas Business Court can remand after it has already determined that removal was proper and exercised jurisdiction. The answer is no.[5] "As a general rule, where jurisdiction is once lawfully and properly acquired, no later fact or event can defeat the court's jurisdiction."[6] *Cont'l Coffee Products Co. v. Cazarez*, 937 S.W.2d 444, 449 (Tex. 1996).

In keeping with the general rule, ***three sources*** persuade that the Business Court should keep jurisdiction fully and finally once it has properly been established:

---

[5] The analysis herein assumes, for sake of argument, that there is no independent basis for Business Court jurisdiction within the Fourth Amended Petition ***alone***, as if that petition represented the first time a court considered the jurisdictional question. But it is not the first time. It is the second time, and that second time came months after the Business Court already exercised jurisdiction and after the Plaintiff amended his pleading to escape proper jurisdiction. While there may be independent, substantive arguments for jurisdiction even based only on the Fourth Amended pleading, mandamus relief is premised here only on the procedural question of whether jurisdiction, once exercised, can be lost.

[6] Respondent acknowledged this general rule in the Second Opinion after Rook cited this proposition in its Response to Plaintiff's Renewed Motion: "As the Rook defendants correctly point out, the 'general rule' is that 'where jurisdiction is once lawfully and properly acquired, no later fact or event can defeat the court's jurisdiction.' " MR 344, ¶9 (citing MR 305) (quoting *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 449 (Tex. 1996)).

(A) language, structure, and purpose of Chapter 25A; (B) difference between Chapter 25A and the Texas Rules of Civil Procedure compared to federal jurisdictional statutes; and (C) practice followed by already well-established Business Courts in other states.

A. **The Express Language Of Several Provisions In Chapter 25A (And Other Rules) Reflects Jurisdiction Is A One-Time Determination That Should Be "Prompt" And "Final."**

The statutory scheme establishing Texas's Business Court (Chapter 25A of the Texas Government Code) sets forth various provisions regarding the importance of a swift and final determination of the Business Court's jurisdiction. As reflected in these statutes, jurisdiction determinations are a one-time event. They are not an ongoing consideration to be revisited at every stage of pleading. Otherwise, the parties would have significant uncertainty concerning where they will proceed, judicial efficiency will be lost with cases moving to and from the Business Court and the district courts, and whether there will be consistent, written opinions on substantive matters.

When interpreting statutes, Texas courts look to the text and give words their ordinary meaning as understood from reading the statute as a whole and in context. *Malouf v. State ex rels. Ellis*, 694 S.W.3d 712, 718 (Tex. 2024). "Context" refers to "the surrounding words and structure of the operative text," which means, in other words, courts should look to the "framework" of the statute within its chapter and

23

strive for a "fair meaning" that "harmonizes" the relevant provisions. *Id.*; *U.S. Polyco, Inc. v. Tex. Cent. Bus. Lines Corp.*, 681 S.W.3d 383, 390 n.3 (Tex. 2023) (per curiam); *Pub. Util. Comm'n of Tex. v. Luminant Energy Co. LLC*, 691 S.W.3d 448, 461–62 (Tex. 2024) (relying on "whole text" canon, which "calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts" (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 167 (2012))). Putting all this together, the court aims to "meld [the statute's] words into a cohesive reflection of legislative intent." *Luminant Energy*, 691 S.W.3d at 461.

Front and center in Chapter 25A is the Legislature's instruction that procedures be established "for the ***prompt, efficient, and final*** determination of business court jurisdiction ***on the filing of an action in the business court***." TEX. GOV'T CODE § 25A.0041(a) (emphases added). The statute then lists several items the Supreme Court should consider when establishing such rules, including the "limited potential for the movement of an action between a district court and the business court as it relates to issues of fundamental fairness or the preservation of constitutionally or statutorily protected rights of the parties…." TEX. GOV'T CODE § 25A.0041(a)(3).

In addition to asking for rules from the Supreme Court, the Legislature itself set forth controlling provisions that seek to ensure "prompt" and "final"

24

determinations of jurisdiction. Section 25A.006 prescribes the nature and timing of jurisdictional decisions in two contexts: (1) an action directly filed in Business Court, and (2) an action removed to Business Court. In the first scenario, there are two steps. The Business Court is to first decide if it has jurisdiction and, if not, transfer or dismiss the action. TEX. GOV'T CODE § 25A.006(b). If jurisdiction is established, the next step is to assign the action to the proper venue or division. TEX. GOV'T CODE § 25A.006(c). The implication here is that once jurisdiction is established and venue assigned, this is a *final* determination pursuant to the intent expressed in § 25A.0041(a).

Relevant here is the second scenario—removal. If an action is first filed "in a district court or county court," but the action "is within the jurisdiction of the business court," a party "may remove the action to the business court." TEX. GOV'T CODE § 25A.006(d). Upon removal, the Business Court must make its own determination—once and for all—whether it has jurisdiction. This is why section 25A.006(d) continues with: "[i]f the business court does not have jurisdiction of the action, the business court shall remand the action to the court in which the action was originally filed." Again, this decision represents a single, "prompt" and "final" determination of jurisdiction.

This is why Texas Rule of Civil Procedure 355, when addressing the very same issue (*i.e.,* removal), states that the court must remand only if it determines

"that ***removal was improper***." TEX. R. CIV. P. 355(f)(1) (emphasis added). It does not say remand "if jurisdiction is later lacking," but rather if "removal" was improper at the time of removal. *See Pub. Util. Comm'n of Tex. v. Luminant Energy Co. LLC*, 691 S.W.3d 448, 461 (Tex. 2024) (when interpreting statutes, courts "presum[es] the Legislature included words that it intended to include and omitted words it intended to omit."); *see also Pharus Funding, LLC v. Garcia*, No. 01-20-00411-CV, 2021 WL 3556679, at *2 (Tex. App.—Houston [1st Dist.] Aug. 12, 2021, pet. denied) ("The Texas Rules of Civil Procedure have the same force and effect as statutes.").

Subsection (f) further suggests the importance of a one-time, prompt and final determination. If an action is to be removed absent agreement of all parties, a party must do so within 30 days of being served with process or discovering the facts establishing the business court's jurisdiction. TEX. GOV'T CODE § 25A.006(f)(1). The reason for this requirement is obvious—the parties need to know as soon as practicable in what court they will proceed, whether that court is to be the Business Court, and in what venue the case will be tried. This prevents months of uncertainty that might otherwise persist and the resulting judicial inefficiency of cases being litigated for months in one forum only to be bounced to another.[7]

---

[7] The parties can of course ***agree*** to removal "at any time during the pendency of the action." Tex. Gov't. Code § 25A.006(f). But removal in that instance does not raise the same policy concerns— no one is being compelled into a court that they did not choose or upon timing that they did not agree in that instance.

Putting all of this together, and considering the entire framework of the statutory scheme for the Business Court, when a case is removed, it must be removed within 30 days. At that time, the Business Court considers its jurisdiction—i.e., whether removal was "proper." Then, when it makes its determination, that decision is a "prompt" and "final" decision about jurisdiction on which the parties may rely to begin preparing their case. Indeed, "[t]he business court judge on establishment of jurisdiction and venue over an action shall by order declare the county in which any jury trial for the action will be held…." TEX. GOV'T CODE § 25A.006(*l*).

Once "removal" is proper, jurisdiction is established for the rest of the life of the case. Remand is appropriate only if the "removal" was "improper." TEX. R. CIV. P. 355(f)(1). The determination of whether removal was proper must be made based on the live pleadings at the time of removal; a proper removal cannot retroactively become improper because a plaintiff later changes his claims.

All of these procedures were appropriately followed in the removal process here. Rook removed within 30 days; Respondent determined it had jurisdiction, which was "prompt" and (should have been) "final"; and Respondent issued its administrative order setting a trial date and laying venue in Travis County. *See* MR 208 (Scheduling Order entered June 24, 2025).

That should have been the end of the jurisdictional story. Respondent's later decision to reverse course based on Plaintiff's gamesmanship and his pleading amendments violated the structure, intent, and express words of Chapter 25A.

**B.     The Federal System Is Different From The Texas System.**

Somewhat understandably (given the lack of established precedent concerning the newly formed Business Court's jurisdiction), Respondent heavily relied on federal case law (namely *Royal Canin*) and the way that removal jurisdiction is handled in federal court to reach its decision about what should happen in Texas Business Court. However, the two systems are different in purpose, structure, and implementation and therefore the federal authorities do not control the outcome here.

The American judicial system, just like the American government more broadly, is founded on the idea of limited federal power. As a result, federal courts, like the federal executive and legislature, can exercise power only where given the authority to do so by the people through the United States Constitution. *See* Art. III, s. 2 (detailing types of cases and controversies within "judicial Power"); Art. I, s. 8 (listing out various areas for which legislature has the "power" to enact laws); Art. II, s. 2 (executive has power to command U.S. military, make treaties, etc.). In contrast, each state is a sovereign having general police power over their people and may enact any law that does not violate a federal or state constitutional right.

28

Accordingly, state courts are equipped and expected to hear any case or controversy regarding any claim or legal right, including federal issues.

Implementing these principles, the United States Congress established limited jurisdiction for federal courts and squarely instructed that they be divested of jurisdiction if and when circumstances change. This is because of the throughline in American jurisprudence that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const., Amendment IX. In other words, federal courts should not hear cases unless they have, and fully retain, the power to do so throughout the life of the case; otherwise, they may violate the very structure of the federal-state divide enumerated in the Constitution.

Congress enacted 28 U.S.C. § 1367 to codify the rule that federal courts could exercise "supplemental jurisdiction" over state law claims, but only if the claims "aris[e] from the same facts." *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 27 (2025). Congress also granted defendants the right to remove their cases to federal court if there was federal jurisdiction and the plaintiff originally filed in state court. *Id.* at 27–28 (citing 28 U.S.C. § 1441(a)). ***Most critically here***, Congress expressly stated in the federal scheme that federal jurisdiction was ***not*** a one-way door:

> If ***at any time before final judgment*** it appears that the district court
> lacks subject matter jurisdiction, the case shall be remanded.

29

28 U.S.C. § 1447(c) (emphasis added).  The Supreme Court continued, "to return to where we started, federal courts are courts of limited jurisdiction: When they do not have (or no longer have) authorization to resolve a suit, they must hand it over." *Royal Canin*, 604 U.S. at 22. Hence the result in *Royal Canin*.

Those six emphasized words (above) make all the difference between the Texas Business Court and federal court jurisdictional schemes and illuminate why Respondent was wrong to read these words into the Texas statute from which they are conspicuously absent. *Luminant Energy*, 691 S.W.3d at 461 (Court "presume[es] the Legislature included words that it intended to include and omitted words it intended to omit."). The Texas legislature is presumed to be well aware of the federal jurisdictional statutes. Just as much, the legislature is presumed to have intentionally omitted words of which it is aware and of which it declined to include in the relevant statute.

As already articulated, the text of the relevant Texas statutes and rules specifically identify removal to be followed by a jurisdictional determination at the time of removal with remand possible only at that time if removal was improper.[8] This is why Section 25A.006(d) mentions that the Business Court "shall remand"

---

[8] There are two inquiries for the court to make upon removal of a case to Business Court: (1) was the removal timely and (2) does the court have jurisdiction.  Once the court is satisfied that both of those requirements are met, as Respondent did here, there is no legitimate reason for the court to disturb that decision.

30

"[i]f the business court does not have jurisdiction of the action" right after conferring the right of removal. This means that a party can remove an action that is "within the jurisdiction of the business court," but the Business Court, upon removal, must remand if it determines it does not have jurisdiction. Supporting this reading, Rule 355(f)(1) of the Texas Rules of Civil Procedure states that the Court must remand if, and only if, it determines "***that removal was improper***." (emphasis added). It does not say remand "if jurisdiction is later lacking," but rather if "removal" was improper at the time of removal. Indeed this rule allowing remand only if the removal is improper is entirely consistent with the Texas Legislature's mandate to the Texas Supreme Court regarding the purpose of the procedural rules the Court was instructed to draft and adopt:

- "establish procedures for the prompt, efficient, and ***final determination*** of business court jurisdiction ***on the filing of an action in the business court***." § 25A.0041(a) (emphasis added).

- "establish ***limited periods*** during which [jurisdictional] issues or rights must be asserted, considered agreed to, or waived;" § 25A.0041(b)(3) (emphasis added); and

- "provide for any other procedures necessary for the ***prompt, efficient, and final*** determination of business court jurisdiction." § 25A.0041(b)(7) (emphasis added).

Given this clear legislative mandate, it is no surprise that none of these statutes or rules approximate the text governing the federal-scheme: "if at any time before final judgment." Even more, the Texas legislature demonstrated that it knew ***exactly***

31

how to use such a phrase when—within the very same section as the statute at issue here—it provided that parties may remove an action, by agreement, "at any time during the pendency of the action." *See* TEX. GOV'T CODE § 25A.006(f). Yet, the phrase is conspicuously absent in the prior subsection (d).

All of this means that *Royal Canin* and the federal removal and remand scheme has no bearing on whether jurisdiction in the Texas Business Court is a one-way door or not. The federal scheme is different and the federal removal and remand statute is different. The Texas Legislature and Supreme Court could have enacted a similar scheme using similar language, but they deliberately did not.

C.    **Another State With A Longer-Established Business Court Has A One-Way Jurisdictional Door.**

Like Texas, North Carolina has a special Business Court within its state judicial system. North Carolina's Business Court has been around since 1996 and was created in an effort to build out a body of case law concerning legal issues important to corporations, much like those for which Delaware had become known. In North Carolina, the business court adjudicates cases that must involve at least one of a series of legal issues or questions, most of which mirror the bases for the Texas Business Court's jurisdiction. *Compare, e.g.*, N.C.G.S. § 7A-45.4(a)(1) (business court jurisdiction is proper if action involves a material issue related to "[d]isputes involving the law governing corporations….", *with* TEX. GOV'T CODE § 25A.004(b)(2) (business court has jurisdiction over "an action regarding the

32

governance, governing documents, or internal affairs of an organization."). Given its long-standing existence, North Carolina's business court has already had the opportunity to address the nature of its jurisdiction and whether jurisdiction can ever be lost by pleading amendments. The answer is an emphatic "no."

In a recent opinion, the North Carolina business court summarized its jurisdictional precedents. The business court's jurisdiction (in North Carolina, it is called a "designation") is exercised if "the pleading upon which [jurisdiction] is based [ ] raise[s] a material issue that falls within one of the categories specified in section 7A-45.4." *Olds v. Olds*, No. 25CV000166-740, 2025 NCBC Order 57, 2025 NCBC LEXIS 102, ¶9 (Aug. 13, 2025) (included in record at MR 396). So long as that is the case, the action, once designated as proper for business court jurisdiction, cannot be remanded: "As this Court has previously held, neither N.C.G.S. § 7A-45.4(a) nor any other statute permits designation, once ordered, to be withdrawn or revoked." *Id.*, ¶11 (cleaned up) (citing *PKT1, LLC v. Vaynberg*, 2022 NCBC LEXIS 72, at *2 (N.C. Super. Ct. July 5, 2022). "Once a designation order has issued, designation to the Business Court is not affected by subsequent filings or court action." *Id.* (collecting additional cases). Even more on the nose:

> Simply put, once a case has been properly designated to the Business Court, a party cannot divest the Court of its authority to hear the case by using gamesmanship—in this case, voluntarily dismissing the claim that was the basis for designation— in an effort to get out of the Business Court."

*Olds*, 2025 NCBC Order 57, ¶12.

Just like here, the plaintiff in *Olds*, tried to amend his pleading less than a month after the business court exercised jurisdiction. He voluntarily dismissed one of his claims, specifically the one for "judicial dissolution," which qualified the case for business court jurisdiction. *Id*., ¶¶4–5. The Business Court flatly rejected this attempt at "gamesmanship." This Court should follow similar reasoning to ensure that Texas Business Court jurisdiction does not start out on the wrong foot and allow such gamesmanship.

## II. Respondent Abused Its Discretion When, After Determining It Had Jurisdiction, Reversed Course Based On Forum-Shopping Amendments By Plaintiff.

As the above demonstrates, Respondent abused its discretion when concluding that the Business Court had been "divested" of jurisdiction. Respondent interpreted and applied the law incorrectly. That the issue may be one that is of "first impression" or "unsettled" makes no difference. *Shipman*, 540 S.W.3d at 566; *Huie*, 922 S.W.2d at 927.

Mandamus relief is appropriate for all the reasons articulated *supra*, at 21–33. The jurisdiction of the Business Court presents an important issue in this State for which litigants and the Business Court need guidance and for which there is no opportunity for interlocutory appeal. To proceed without mandamus review would deprive defendants in this case of their right to proceed in the appropriate forum

given the legislature's recent creation of the Business Court and enactment of its jurisdictional framework, all while countenancing Plaintiff's jurisdictional gamesmanship.

## PRAYER

For these reasons, Relator ColossusBets Limited prays this Court grant a writ of mandamus and direct Respondent to (1) vacate its August 25, 2025, order remanding the Lawsuit to the District Court, (2) reinstate its administrative and scheduling orders, and (3) exercise jurisdiction over, and proceed with, the Lawsuit in the Texas Business Court.

Relator also requests any further relief to which it may be justly entitled.

Dated: September 19, 2025

Respectfully submitted,

**PILLSBURY WINTHROP SHAW PITTMAN LLP**

Derrick Carson (Texas Bar No. 24001847)
(Lead Counsel)
Charles Conrad (Texas Bar No. 24040721)
Jonathan Sink (Texas Bar No. 24099968)
Lindsey Mitchell (Texas Bar No. 24138645)
PILLSBURY WINTHROP SHAW PITTMAN LLP
609 Main Street, Suite 2000
Houston, Texas 77002
(713) 276-7600 (Telephone)

(713) 276-7673 (Facsimile)
Derrick.Carson@pillsburylaw.com
Charles.Conrad@pillsburylaw.com
Jonathan.Sink@pillsburylaw.com
Lindsey.Mitchell@pillsburylaw.com

*Counsel for Relator ColossusBets Limited*

# **VERIFICATION**

THE STATE OF TEXAS    §
§
COUNTY OF HARRIS    §

Before me, the undersigned authority, on this day personally appeared Derrick Carson, counsel for Relator ColossusBets Limited in the above cause, known to me to be the person whose name is subscribed to the foregoing instrument, and stated that the factual statements in this petition for writ of mandamus are supported by competent evidence included in the Relator's Mandamus Record.

*/s/ Derrick Carson*
Derrick Carson

**CERTIFICATE OF SERVICE**

I certify that on September 19, 2025, a true and correct copy of the foregoing document was served via electronic transmission on counsel of record.

*/s/ Derrick Carson*
Derrick Carson

**CERTIFICATE OF COMPLIANCE**

This brief complies with the length limitations of TEX. R. APP. P. 9.4(i)(2)(B) because this brief consists of 7,254 words, excluding the parts of the brief exempted by TEX. R. APP. P. 9.4(i)(1).

*/s/ Derrick Carson*
Derrick Carson

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Samantha Guajardo on behalf of Derrick Carson
Bar No. 24001847
samantha.guajardo@pillsburylaw.com
Envelope ID: 105864280
Filing Code Description: Original Proceeding Petition
Filing Description: Petition for Writ of Mandamus
Status as of 9/22/2025 7:20 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Honorable Melissa Andrews | | bcdivision3a@txcourts.gov | 9/19/2025 8:26:13 PM | SENT |
| Grace Miller | 24132499 | gmiller@sheppardmullin.com | 9/19/2025 8:26:13 PM | SENT |
| Aimee Oleson | 24036391 | aoleson@sheppardmullin.com | 9/19/2025 8:26:13 PM | SENT |
| Jon Smith | 18630750 | jon@jonmichaelsmith.com | 9/19/2025 8:26:13 PM | SENT |
| Bradden Pippin | 24143893 | bradden.pippin@troutman.com | 9/19/2025 8:26:13 PM | SENT |
| Kathleen Laird | | Kathleen.Laird@Troutman.com | 9/19/2025 8:26:13 PM | SENT |
| Mia Lorick | 24091415 | Mia.Lorick@troutman.com | 9/19/2025 8:26:13 PM | SENT |
| David Harrell | 793905 | david.harrell@troutman.com | 9/19/2025 8:26:13 PM | SENT |
| Jeffrey Adams | 24006736 | jeff@jeffadamslaw.com | 9/19/2025 8:26:13 PM | SENT |
| Manfred Sternberg | 19175775 | manfred@msternberg.com | 9/19/2025 8:26:13 PM | SENT |
| Mary Lagarde | 24037645 | mary@lagardelaw.com | 9/19/2025 8:26:13 PM | SENT |
| Richard Lagarde | 11819550 | richard@lagardelaw.com | 9/19/2025 8:26:13 PM | SENT |
| Lindsey Mitchell | | lindsey.mitchell@pillsburylaw.com | 9/19/2025 8:26:13 PM | SENT |
| Jon Sink | | jonathan.sink@pillsburylaw.com | 9/19/2025 8:26:13 PM | SENT |
| Charles Conrad | | charles.conrad@pillsburylaw.com | 9/19/2025 8:26:13 PM | SENT |
| Derrick Carson | | Derrick.carson@pillsburylaw.com | 9/19/2025 8:26:13 PM | SENT |
| Ryan Dickinson | | ryandickinson79@gmail.com | 9/19/2025 8:26:13 PM | SENT |